```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,      :
        Plaintiff
                               :

        vs.                    :   CRIMINAL NO.  1:CR-02-011-01

                               :
ERIC CRAFT,
        Defendant              :
```

*M E M O R A N D U M*

I.   *Introduction*.

Defendant, Eric Craft, has filed a motion under 28 U.S.C. § 2255 to vacate his conviction and sentence after he pled guilty to a violation of 18 U.S.C. § 924(j), making it illegal to cause the death of another person through the use of a firearm during a drug-trafficking offense.  He was sentenced to 480 months' imprisonment.

Distilling the claims from three documents (doc. 116, 118 and 121), Defendant raises the following grounds for relief. First, trial counsel coerced Defendant into pleading guilty and into cooperating with the promise that he would be convicted of a lesser offense and his mother-in-law and wife would receive probation.  Defendant was also told if he did not plead guilty, he and his family members would spend a very long time in prison.  Second, trial counsel failed to object to the use at sentencing of incriminating statements Defendant had made even though in January 2002 the prosecutor had agreed in writing that

any statements Defendant made while cooperating would not be used against him.  Third, the plea was involuntary because Defendant pled guilty in return for a "lesser prison term." (Doc. 116, ninth page).  Fourth, trial counsel was ineffective in not being prepared to argue sentencing objections.  Fifth, counsel was ineffective in not arguing the ambiguity of Defendant's plea; the written plea agreement required him to plead guilty to a violation of section 924(j) but the information charged him with a violation of section 924(j)(2), the part that incorporates manslaughter.  Sixth, trial counsel was ineffective in not knowing the difference between section 924(j)(1) and 924(j)(2); they define the separate crimes of murder and manslaughter.  Seventh, the record does not reveal whether the court gave notice that it was departing upward in its sentencing calculation.[1]

      Counsel was appointed to represent Defendant at a hearing on the 2255 motion held on July 21, 2006.  The following background is taken from the record of the criminal case and that hearing.

---

[1] We had previously thought that Defendant was also presenting a claim that the sentence was imposed based in part on counts that had been dismissed as part of the plea bargain (doc. 127, order of April 12, 2006) but now realize that the language leading us to believe that was merely discussion about a case.

II.   *Background*.

On January 16, 2002, Defendant was charged in a two-count indictment with making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6) and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  On March 6, 2002, Defendant was charged in a sixteen-count superseding indictment with: conspiracy to distribute fifty grams or more of crack cocaine and 200 grams or more of heroin, in violation of 21 U.S.C. § 846; distribution of fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); distribution of 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); two counts of carrying or using a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6); possession of firearms by an armed career criminal, in violation of 18 U.S.C. § 922(g)(1); conspiracy to make false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 371; and seven counts of making false statements in connection with the acquisition of firearms, all in violation of 18 U.S.C. § 922(a)(6).  Defendant's wife and mother-in-law were also named in this indictment.

Defendant pled not guilty to the superseding indictment. The United States Attorney's Office then approached his lawyer to see if Defendant would engage in an off-the-record proffer to discuss, among other things, the homicide of Lavelle Gamble, a known crack-cocaine drug dealer. (Doc. 106, guilty-plea transcript, p. 9). In April 2001, Gamble's body had been found in a car in Harrisburg with a bullet in the head. (*Id.*).

At the 2255 hearing, Defendant's lawyer testified that he advised Defendant that if he had anything to do with the murder not to engage in the proffer, but Defendant "was adamant" that he was not involved and wanted to cooperate to reduce what Defendant believed was a sentence of some twenty years on the plea offer then existing on the superseding indictment. (Doc. 138, 2255 hearing transcript, p. 58). For his part, Defendant testified that he agreed to make a proffer because he had been offered a deal of about twenty-three years on the superseding indictment but did not want to accept it. He understood the government wanted his cooperation so that they could get Jeffrey Holland and Ricky Holland, two others involved with him. In return, Defendant's wife would get probation and Defendant would be sentenced to "a lesser offense" of some unspecified kind. (Doc. 138, p. 11).

On April 16, 2002, Defendant and his lawyer signed the proffer agreement. In pertinent part, the agreement provided that "no statements made by [Defendant] during the

proffer/discussion will be used against him in the Government's case-in-chief should [he] be indicted on charges related to the subject matter of the proffer/discussion." (2255 hearing, Def.'s Ex. 1). Defendant testified that his lawyer told him that under the agreement, any information he provided could only be used against him if he did not plead guilty. (Doc. 138, p. 41). Counsel denied making that statement. (*Id.*, p. 59). Counsel testified that he explained the proffer by saying it allowed the government to use Defendant's statements in rebuttal or against contradictory statements Defendant might make on the stand, or to investigate unknown crimes Defendant admitted to during the proffer. (*Id.*, pp. 59-60).

At the first proffer meeting, Defendant said he was present at the murder scene but that a person named Ernest Hedgesmith had killed Gamble. At a subsequent meeting, he said that Jeffrey Holland had committed the murder. At the final meeting, Defendant admitted being the killer. (*Id.*, pp. 48-50; 60-61).

On September 11, 2002, the defendant executed a plea agreement containing the following relevant terms. Defendant agreed to plead guilty to a superseding information alleging a violation of 18 U.S.C. § 924(j), causing the death of another by use of a gun during a crime of violence or drug-trafficking offense. (Plea agreement, ¶ 1). Defendant acknowledged the maximum penalty for the offense was life imprisonment, (*id.*),

and that the court was free to impose any sentence up to the maximum.  (*Id.*, ¶ 19).  The government could provide the probation office "all information in its possession which the United States deems relevant regarding the defendant's background, character, cooperation, if any, and involvement in this or other offenses."  (*Id.*, ¶ 15).  The government could also present at sentencing "all relevant information with respect to the defendant's background, character and conduct including the conduct that is the subject of the charges which the United States has agreed to dismiss . . ."  (*Id.*, ¶ 18).  Defendant agreed to cooperate with the government.  (*Id.*, ¶ 14).  In return, if the government decided that the defendant had provided "substantial assistance" within the meaning of 18 U.S.C. § 3553(e), it would "request the Court to depart below any applicable mandatory minimum range and/or the guideline range when fixing a sentence . . . ."  (*Id.*).  The agreement contained a merger clause, specifying that it was "the complete and only" plea agreement between the parties, that it "supersede[d] all prior understandings, if any, whether written or oral," and that it could not be modified except in writing.  (*Id.*, ¶ 37).  The agreement also specified that "[n]o other promises or inducements" had been made to Defendant nor "any predictions or threats have been made in connection with this plea."  (*Id.*).  At the time the agreement was signed, there was

still a plea offer open for twenty to thirty years on the sixteen-count superseding indictment. (Doc. 138, pp. 76-77).

On the same day, the superseding information was filed. It charged Defendant with the use of a .380-caliber handgun to murder Lavelle Gamble during the unlawful distribution of crack cocaine, "in violation of Title 18, United States Code, Section 924(j); Section 2."

At his 2255 hearing, Defendant testified that his lawyer told him when discussing the plea agreement he would not be sentenced for first-degree murder because Defendant had basically given the government the case. (Doc. 138, pp. 15-16). It was explained to him that signing the agreement meant he was going to get less time than the twenty-three years being offered on the sixteen-count superseding indictment. (Id., p. 23). His lawyer also did not go over the paragraphs of the plea agreement with him. (*Id.*, p. 16). Craft's lawyer denied telling him that if he pled guilty to killing Gamble, he would get a better sentence than the one being offered on the superseding indictment, (*id.*, p. 62-630, but that he might get a break at sentencing if he cooperated. (*Id.*, p. 63). Contrary to Defendant's representations, counsel did go through each and every paragraph of the plea agreement. (*Id.*, p. 64). Additionally, although Defendant wanted manslaughter now that he had "put himself in the murder," (*id.*, p. 63), counsel explained it would be either first- or second-degree murder, with the

7

defense arguing for second-degree. (*Id.*). Finally, counsel advised Defendant that he was not going to get a reduction for substantial cooperation because he had "caused himself to be a person that couldn't be relied on by the Government." (*Id.*). Nonetheless, Defendant signed the plea agreement. (*Id.*, p. 64). Counsel never told Defendant he would receive a sentence less than the guidelines range although that was Defendant's hope. (*Id.*, p. 66). Counsel never promised Defendant he would get less than twenty years on a homicide charge, or that his wife and mother-in-law would get probation if he signed the plea agreement. (*Id.*, p. 68-69; 70-71).

The next day, September 12, 2006, a guilty-plea hearing was held. Defendant pled guilty to the superseding information. The government represented that it considered the case to be one of first-degree murder and had so advised Defendant. (Doc. 106, guilty-plea hearing transcript, p. 4). Defendant acknowledged his sentence could be up the maximum under the law, life imprisonment, (*id.*, p. 7), and that the sentencing guidelines would be used to establish his sentence, which would not be known until after a presentence report (PSR) had been prepared. (*Id.*). Defendant denied that anyone had promised him anything or threatened him in any way to obtain his guilty plea. (*Id.*, p. 11).

A PSR was prepared, using Defendant's admissions during the proffer. Defendant's base offense level for his

8

section 924(j) offense was 43, relying on U.S.S.G. § 2A1.1 for a first-degree murder, and Defendant had a total offense level of 40 after a three-point reduction for acceptance of responsibility.  Defendant's criminal history category was VI, based on his career offender status.  This gave Defendant a guideline range of 360 months to life.

At sentencing on May 8, 2003, Defendant objected to the PSR, arguing that the offense rose no higher than second-degree murder as opposed to first-degree murder.  Defendant also sought a downward departure under U.S.S.G. § 5K2.16 for his voluntary disclosure of the offense.  Both objections were denied.[2]  Defendant was sentenced to 480 months of imprisonment and five years' supervised release.  The indictment and superseding indictment were dismissed.

On direct appeal, Defendant argued that the government had breached the plea agreement because he had agreed to plead guilty to murder or manslaughter under section 924(j),[3] and that

---

[2] The first objection was denied because first-degree murder under federal law includes felony murder, which Defendant's conduct clearly fit.

[3] Section 924(j) provides:

**(j)** A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall-

**(1)** if the killing is murder (as defined in section 1111), be punished by death or imprisonment for any term of years or life; and

**(2)** if the killing is manslaughter (as defined in

9

the plea agreement should be construed in his favor as establishing a conviction for manslaughter. The Third Circuit rejected the claim, noting that the guilty-plea hearing established that Defendant understood he was pleading guilty to murder, not manslaughter. *United States v. Craft*, 139 Fed. Appx. 372, 374-75 (3d Cir. 2005)(nonprecedential).

III. *Discussion*.

We resolve Defendant's claims as follows. We reject his first claim because we accept trial counsel's testimony that he never promised Defendant a lesser sentence than the one offered on the superseding indictment or that his mother-in-law and wife would receive probation. It also follows from trial counsel's testimony that he never told Defendant that if he did not plead guilty, he and his family members would spend a very long time in prison.

We add that on the occasions he executed his plea agreement and pled guilty, Defendant stated that no threats or promises had been made to him to obtain his guilty plea. Further, on both occasions he acknowledged that his sentence could be life imprisonment. Moreover, in the plea agreement he acknowledged that the court would be deciding what sentence

---

     section 1112), be punished as provided in that
     section.

18 U.S.C. § 924(j).

would be imposed and at the guilty-plea hearing he acknowledged that the sentencing guidelines would be used to establish his sentence, which would not be known until after a PSR had been prepared. Defendant's second claim is that trial counsel improperly failed to object to the use at sentencing of the incriminating statements Defendant had made as part of the April 2002 proffer agreement.  Defendant bases this second claim on *United States v. Baird*, 218 F.3d 221 (3d Cir. 2000), but that case is distinguishable.

In *Baird*, the Third Circuit did hold that a cooperation agreement precluded the government from using the statements the defendant made while he was cooperating against him at sentencing, but the agreement at issue in that case was materially different.  There, the defendant signed a proffer in letter form stating that "from now on" information he supplied was "on the record, and could be admitted against [him] in the future if [he] failed to plead guilty."  218 F.3d at 226.  The defendant then executed a written plea agreement in which he agreed to plead guilty but which contained a merger clause that did not provide the agreement would supersede previous ones, thereby allowing the proffer to be read alongside the later plea agreement.  *Id.* at 230.  After the defendant pled guilty, the government used the pre-plea admissions he had made against him at sentencing.  Construing the proffer against the government as the drafter, the court of appeals said this was error because

11

the defendant's admissions could only be used against him if he did not plead guilty, and the defendant had in fact pled guilty. *Id.* at 229.[4]

In the instant case, the agreement did not provide that the information Defendant might divulge could only be used against him if he did not plead guilty. Instead, the April 16, 2002, proffer agreement provided that "no statements made by [Defendant] during the proffer/discussion will be used against him in the Government's case-in-chief should [he] be indicted on charges related to the subject matter of the proffer/discussion." Here, the government only agreed that the statements would not be used in its case-in-chief. Of course, Defendant pled guilty so no trial took place, but the government did not breach the proffer by its use at sentencing of Defendant's admissions that he had committed the murder.

Defendant has testified that his lawyer told him that under the agreement any information he provided could only be used against him if he did not plead guilty, but counsel has denied making that statement, and we accept counsel's veracity. Additionally, counsel testified that he explained the proffer by saying it did allow the government to use Defendant's statements

---

[4] This is the essential rationale. The Third Circuit did have to confront whether the defendant's attempt to shield a coconspirator by fabricating evidence was a breach of the proffer allowing the government to repudiate the agreement and use his statements against him, but we need not go into those details.

12

against him, for example, in rebuttal or against contradictory statements Defendant might make on the stand, just not in its case-in-chief.

Further, unlike in *Baird*, Defendant signed a plea agreement containing a merger clause specifying that it did "supersede[ ] all prior understandings, if any, whether written or oral." The agreement allowed the government to provide the probation office "all information in its possession which the United States deems relevant regarding the defendant's background, character, cooperation, if any, and involvement in this or other offenses." The government could also present at sentencing "all relevant information with respect to the defendant's background, character and conduct including the conduct that is the subject of the charges which the United States has agreed to dismiss." Hence, Defendant's statements could be used against him at sentencing, and his lawyer was not ineffective in not objecting to their use.

Additionally, Defendant cannot rely on U.S.S.G. § 1B1.8(a). That guideline applies only when the government agrees in the cooperation agreement that self-incriminating information will not be used against the defendant. Here, the government did not agree not to use the information against

Craft; at least its only agreement was not to use the information in its case-in-chief.[5]

Defendant's third claim is that the plea was involuntary because Defendant pled guilty in return for a "lesser prison term." (Doc. 116, ninth page). However, we accept his lawyer's representation that he never promised Defendant a lesser prison sentence if he pled guilty. (Doc. 138, pp. 70-71). As also noted above, in the plea agreement and at his guilty-plea hearing, Defendant stated that no promises had been made to him in return for a plea of guilty.

The fourth claim is that trial counsel was ineffective in not being prepared to argue sentencing objections. We reject this claim because it is based solely on counsel's response to the court's question at the sentencing hearing whether he was prepared to argue his objections. Counsel asked, "May I just grab my file? I didn't have that part with me." (Doc. 105, p. 2). The record of the sentencing hearing shows that counsel was prepared to, and did, argue his objections.

---

[5] Section 1B1.8(a) provides:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and . . . the government agrees that self-incriminating information . . . will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement..

The fifth claim is that counsel was ineffective in not arguing the ambiguity of Defendant's plea. The written plea agreement required him to plead guilty to a violation of section 924(j), but Defendant asserts the information charged him with a violation of section 924(j)(2), the part that incorporates manslaughter. We reject this claim because the information charged Defendant with a violation of section 924(j) and did not mention subsection (2). The information did mention "Section 2," but this was a reference to 18 U.S.C. § 2, the aiding-and-abetting offense that often accompanies substantive offenses in a charging document. Further, while the plea agreement mentioned only section 924(j), the Third Circuit determined on appeal that "[a]t the time Craft pleaded guilty, he did so knowing he was pleading guilty to a murder charge." *Craft, supra*, 139 Fed. Appx. at 375. We will not relitigate what has already been decided on appeal. *See United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981).

The sixth claim is that trial counsel was ineffective in not knowing the difference between section 924(j)(1) and 924(j)(2); they define the separate crimes of murder and manslaughter. This claim is answered by the Third Circuit's determination on appeal that Defendant knew he was pleading guilty to murder.

The seventh claim is that the record does not reveal whether the court gave notice that it was departing upward in

15

its sentencing calculation. The short answer to this is that the court did not depart upward. Defendant's guideline range was 360 months to life and the court sentenced Defendant to 480 months' imprisonment.

Finally, we note that Defendant has argued in his post-hearing brief that trial counsel was ineffective because he did not either try to reopen negotiations on the plea deal for the sixteen-count indictment or cap the sentence for the deal on the superseding information to the term that was contemplated for the deal on the sixteen-count indictment. We think this argument misses that Defendant, against advice of counsel, entered into the proffer agreement and eventually admitted, after falsely accusing two others, to the murder of Lavelle Gamble. At that point, the options Defendant mentions were not viable.

IV. *Conclusion*.

Having considered all of the claims, we will issue an order denying the 2255 motion.[6] The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Defendant is advised that he has the right for sixty (60) days to appeal our order denying his 2255 motion,

---

[6] In paragraph 32 of the plea agreement, Defendant agreed not to appeal or seek postconviction relief against his sentence. The government has not argued this provision should bar Defendant's attack on his sentence, so we do not raise it either.

16

*see* 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22.

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge

Date: December 28, 2006

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,       :
          Plaintiff
                                :

          vs.                   :   CRIMINAL NO.  1:CR-02-011-01

                                :
ERIC CRAFT,
          Defendant             :
```

## O R D E R

AND NOW, this 28th day of December, 2006, it is ordered that:

    1.  Defendant's motion (doc. 116, 118 and 121) under 28 U.S.C. § 2255 is denied.

    2.  A certificate of appealability is denied.

    3.  The Clerk of Court shall close this file.

                                       /s/William W. Caldwell  
                                       William W. Caldwell  
                                       United States District Judge